# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| TRACY CANTRELL, | ) |
| Plaintiff, | ) Case No. 2:12-cv-01504-GMN-GWF |
| vs. | ) **FINDINGS AND** |
| SOCIAL SECURITY ADMINISTRATION, | ) **RECOMMENDATIONS** |
| Defendant. | ) |

This case involves judicial review of administrative action by the Commissioner of Social Security denying Plaintiff Tracy Cantrell's ("Plaintiff") claim for disability benefits under Title II of the Social Security Act ("SSA"). The Court granted Plaintiff's Application to Proceed in Forma Pauperis (#1) on August 29, 2012. *See Doc. #2*. Plaintiff's Complaint (#3) was filed August 30, 2012. Defendant's Answer (#20) was filed on March 25, 2013, along with a Notice of Filing the Administrative Record (#21). This matter has been submitted to the undersigned United States Magistrate Judge for Findings and Recommendations on Plaintiff's Motion for Reversal and Alternative Motion for Remand (#23), filed on April 16, 2013. Defendant filed an Opposition and Alternative Motion for Summary Judgment (#24) on May 9, 2013. Plaintiff seeks judicial review of Administrative Law Judge John Hayer's ("ALJ") decision dated May 24, 2011. (Administrative Record, hereinafter "AR," 13-23). At issue is whether the ALJ's consideration of a sit/stand option and an adjustable desk in finding non-disability was improper.

## BACKGROUND

**A.    Procedural History**

Plaintiff filed an application for a period of disability, disability insurance benefits, and supplement security income on September 1, 2009. (AR 137). Plaintiff alleges a disability onset date

of August 4, 2009. (AR 171). The Commissioner denied Plaintiff's claims at the initial determination on March 3, 2010. (AR 69). Plaintiff filed a request for reconsideration of that determination on March 22, 2010. (AR 74). The Commissioner denied reconsideration on May 12, 2010. (AR 75). Plaintiff requested an appeal before an ALJ on July 7, 2010. (AR 84). The ALJ conducted a hearing on May 2, 2011. (AR 43). Vocational Expert Robin Generaux ("VE Generaux") testified at the hearing. (AR 16). The ALJ issued an unfavorable decision on May 24, 2011. (AR 23). Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). This matter has been referred to the undersigned for a report of findings and recommendations under 28 U.S.C. §§ 636 (b)(1)(B) and (C).

**B.    Factual History**

Plaintiff was born on July 12, 1987. (AR 46). In 2005, Plaintiff worked on and off as a dietary aide at Elgin Convalescent Hospital. (AR 47). Plaintiff then worked as a medical biller and coder at Mountain Podiatry at Summerlin Hospital for two years until August 3, 2009. (AR 47). Plaintiff testified at the hearing that she stopped working to undergo back surgery on August 4, 2009. (AR 47). Plaintiff claims that the need for surgery arose out of herniated discs as a result of falling off a surgical table while undergoing an operation. (AR 498).

As bases for her application for disability benefits, Plaintiff complained of depression and lower back pain due to surgery and lumbar disc disease. Plaintiff underwent L4-5 and L5-S1 epidural steroid blocks on February 25, 2009, with a post-procedure diagnosis of lumbar disc herniation, lumbar radiculopathy, and 50% reduction in pain. (AR 262). Motor nerve conduction tests performed on the same day revealed no abnormalities. (AR 273). At a followup on March 3, 2009, Plaintiff reported some, but not prolonged, relief. (AR 240). At the time, Plaintiff was taking Hydrocodone and continued to work. *Id.* At a followup on March 13, 2009, Plaintiff was reported to be "deconditioned, in mild to moderate distress," and "symptomatic despite treatment rendered." (AR 260). Plaintiff was recorded as having an antalgic gait, decreased sensation in the right posterior lateral thigh, and being able to forward bend only 30 degrees. *Id.*

On April 29, 2009, Plaintiff underwent a diagnostic provocative CT discography of the lumbar spine, which revealed internal disc disruption at L4-L5. (AR 225). One of Plaintiff's treating physicians noted on May 12, 2009 that Plaintiff "has failed conservative therapy including physical

therapy, nonsteroidal anti-inflammatory medications, multiple injection therapy, and pain medications." (AR 234). On August 4, 2009, treating physician Mark Kabins, MD performed a complete anterior discectomy at the L5-S1 level with anterior fusion and instrumentation. (AR 345). Followup records indicate Plaintiff continued to complain of residual back discomfort over the next year. (AR 420-488, 710-14). Plaintiff continued to receive the services of a pain specialist at the time of the ALJ hearing. (AR 19). On November 3, 2010, at a visit to her pain specialist, Plaintiff demonstrated symmetric reflexes, negative straight leg raising, and intact motor strength. *Id.* (*see also* AR 684). Plaintiff's gait was described as steady and unassisted with good coordination and intact heel-toe gait. (AR 684).

On April 28, 2011, Plaintiff's treating physician, Mark Kabins, MD, opined that "[Plaintiff] is currently disabled due to 1) failed laminectomy syndrome; 2) facet syndrome; 3) obesity; and 4) post injury neuritis." (AR 718). On February 24, 2010, Jerold Sherman, DO conducted a consultative examination of Plaintiff at the request of the state agency. (AR 407). There, Plaintiff complained of constant pain in the right thigh, calf, and foot. *Id.* She reported that her pain was aggravated with walking 30 minutes, sitting one hour, standing for 45 minutes, or with any pushing, pulling, or lifting activities. *Id.* At the time, she was using a back brace prescribed after her operation and was using a wheeled walker for ambulation. *Id.* Physical examination revealed the Plaintiff to be 5 feet tall and 185 pounds. (AR 408). Dr. Sherman reported Plaintiff had a normal heel-toe gait, and had a slightly decreased range of motion. *Id.* There was no evidence of muscle spasm and straight leg raising was negative. Plaintiff complained of pain at slight touch. *Id.* X-rays revealed fusion at the L5-sacral region and metal fusion device with other disc spaces maintained. (AR 409). Dr. Sherman opined that Plaintiff was not able to sit for more than six hours or stand or walk for more than two hours in an 8-hour day and required the use of a walker to ambulate. *Id.* He further opined that she could lift no more than 9 pounds and could not squat, kneel, craw, bend at the waist, or climb stairs. *Id.*

Plaintiff was also the subject of two residual functional capacity ("RFC") assessments. State agency examiner Mitch Brown-Silveira completed an RFC assessment on March 2, 2010. (AR 419). Therein, he opined that Plaintiff could occasionally lift 10 pounds, frequently lift less than 10 pounds, stand or walk 2 hours in an 8-hour work day, sit six hours in an 8-hour work day, and push or pull an unlimited amount. (AR 413). Brown-Silveira also opined that Plaintiff could frequently balance,

1    stoop, kneel, and occasionally climb, crouch, or crawl. (AR 414). Brown-Silveira concluded that his
2    assessment was significantly similar to Dr. Sherman's. (AR 418). Julius Villaflor, MD conducted an
3    RFC assessment on May 4, 2010. (AR 496). Dr. Villaflor opined that Plaintiff could occasionally lift
4    10 pounds, frequently lift less than 10 pounds, stand or walk 2 hours in an 8-hour work day, sit six
5    hours in an 8-hour work day, and push or pull an unlimited amount. (AR 490). Dr. Villaflor also found
6    that Plaintiff could occasionally climb, balance, stoop, kneel, and crouch, but never crawl. (AR 491).
7    Finally, Dr. Villaflor stated his assessment was significantly different than Dr. Sherman's, asserting that
8    Dr. Sherman's opinions were internally inconsistent and contained Plaintiff's "symptom
9    embellishment." (AR 496).

10       Plaintiff also claimed to have depression. (AR 184). At the hearing, Plaintiff testified that Dr.
11   Kabins was "going to have [her] go see a psychologist" and said her back pain and subsequent lack of
12   social life is "really bad," causing her to "cry all the time" and to feel "like [she] can't do anything."
13   (AR 58). Due to the lack of psychiatric evidence, the state agency obtained a consultative
14   psychological examination by Bonnie Winkleman, Psy.D. on May 18, 2010. (AR 498). Plaintiff
15   complained to Dr. Winkleman of worrying about her health and difficulty sleeping due to pain.
16   Plaintiff was cooperative with normal speech and goal directed thought process. (AR 499). She had
17   average short term and immediate memory. (AR 500). Dr. Winkleman opined that Plaintiff is able to
18   understand and remember a variety of uncomplicated two- or three-step tasks and interact appropriately
19   with supervisors, coworkers, and the public. (AR 501). Dr. Winkleman also opined that, due to
20   Plaintiff's back impairment, she was limited to one-step tasks. *Id.*

21       Non-examining state agency psychologist Mark Evans, Ph.D. completed a mental RFP on
22   December 16, 2009. (AR 393). Dr. Evans diagnosed Plaintiff with non-severe depression. (AR 396).
23   Dr. Evans then considered the four broad functional areas set forth in 12.00C of the Listing of
24   Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Paragraph B criteria"). Dr. Evans found no
25   limitations in the areas of daily living, social functioning, maintaining concentration, persistence, or
26   pace, or episodes of decompensation. (AR 403).

27       **C.    ALJ's Decision**
28       The ALJ issued his decision on May 24, 2011. The ALJ found that Plaintiff was not disabled,

because Plaintiff possessed sufficient RFC to perform past relevant work.  In reaching this conclusion, the ALJ followed the five-step process set forth in 20 C.F.R. § 404.1520(a)-(f).  First, the ALJ found Plaintiff has not engaged in substantial gainful activity since the alleged onset date of August 4, 2009. (AR 15).  Second, the ALJ found Plaintiff had severe impairments in the form of degenerative disc disease of the lumbar spine and status post anterior discectomy at the L5-S1 level with anterior fusion and instrumentation.  (AR 16).  Third, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets one of the listed impairments in 20 C.F.R. § 404, Subpt. P, Appx. 1.  (AR 17).  Fourth, the ALJ found Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with the option to alternate between sitting and standing as needed.  (AR 18).  The ALJ found that Plaintiff is capable of performing her past relevant work as a billing clerk, as the job is generally performed.  (AR 21).  The ALJ made an alternative finding at step five, that, given Plaintiff's age, education, work experience, and RFC, she is capable of performing alternative work in positions that exist in significant numbers in the national economy.  (AR 22).

In his step two analysis, the ALJ found Plaintiff's back impairments to be severe because they cause more than a minimal effect on Plaintiff's ability to perform basic work activities.  (AR 16).  The ALJ did not find Plaintiff's mental impairments to be severe, however.  *Id.*  In making that finding, the ALJ considered the Paragraph B Criteria: (1) activities of daily living, (2) social functioning, (3) concentration, persistence, or pace, and (4) episodes of decompensation.  (AR 17).  Based largely on the lack of mental health treatment in the record and on the opinions of Dr. Winkleman and Dr. Evans, the ALJ found no more than mild limitation in functional areas (1) through (3), and no limitations in area (4).  *Id.*

At step four, taking into consideration Plaintiff's testimony and the medical opinions, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity and limiting effect of the symptoms were not credible.  (AR 19).  At the hearing, Plaintiff testified that she has pain that radiates down her right leg to her foot, that she can stand for no more than 60 minutes, walk for no more than 15 minutes, and sit for no more than 30 minutes.  (AR 55).  She also testified that she is unable to lift a gallon of milk.  (AR 48).  The ALJ summarized the two physical RFCs and her treating physician's

1  opinion, affording them various degrees of weight, and concluded the record did not support the
2  severity of Plaintiff's alleged symptoms or the limitations within Dr. Sherman's RFC. (AR 20). The
3  ALJ afforded Dr. Kabins' opinion limited weight, because the "record fails [to] support the doctor's
4  opinion that [Plaintiff] is incapable of all work." (AR 21). The ALJ therefore concluded that Plaintiff
5  could perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with the option
6  to alternate between sitting and standing. (AR 18).

7        The ALJ then found that Plaintiff is able to perform her past relevant work as a medical billing
8  clerk. (AR 21). In support of this finding, the ALJ relied on the following testimony of VE Generaux:

> ALJ: Now I'd like to ask you to respond to a hypothetical question. An individual could lift 10 pounds and can complete an eight-hour work day if given the option to alternate between sitting and standing. So it would be 10 pounds sedentary with a sit/stand option.
>
> I know the sit/stand option isn't discussed in the dictionary of occupational manuals. Is there something in your work experience that allows you to testify about jobs with sit/stand options?
>
> VE: Yes, Your Honor. I have over 25 years' experience in vocational rehabilitation.
>
> ALJ: Okay. Given that hypothetical question would such an individual be able to perform [Plaintiff's] past work?
>
> VE: She would be able to perform given those parameters, the insurance medical clerk.
>
> [...]
>
> ALJ: Okay. In order to sit/stand, is that the kind of job that has, or could have a desk that you can adjust to the height, an electric desk that will raise and lower so you can stand and sit at the desk and do your job?
>
> VE: Yes. Yes.

(AR 59). After this examination by the ALJ, Plaintiff's counsel engaged VE Generaux with the following examination:

> Counsel: Isn't the sit/stand option in the workplace an accommodation though? Not a normal part of the job function?
>
> VE: It can be an accommodation, yes.

(AR 60). In his decision, the ALJ summarized the above as follows: "[Plaintiff's] attorney asked Ms. Generaux about the adjustable table and she told him that this is considered a reasonable accommodation." (AR 22). The ALJ then made the alternative finding that the record and Generaux's testimony indicated Plaintiff is capable of performing the following other work: bookkeeping clerk, credit authorizer, and information clerk.

## DISCUSSION

### I. Standard of Review

A federal court's review of an ALJ's decision is limited to determining only (1) whether the ALJ's findings were supported by substantial evidence and (2) whether the ALJ applied the proper legal standards. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); *Delorme v. Sullivan,* 924 F.2d 841, 846 (9th Cir. 1991). The Ninth Circuit has defined substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Woish v. Apfel*, 2000 WL 1175584 (N.D. Cal. 2000) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)); *see also Lewis v. Apfel*, 236 F.3d 503 (9th Cir. 2001). The Court must look to the record as a whole and consider both adverse and supporting evidence. *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Where the factual findings of the Commissioner of Social Security are supported by substantial evidence, the District Court must accept them as conclusive. 42 U.S.C. § 405(g). Hence, where the evidence may be open to more than one rational interpretation, the Court is required to uphold the decision. *Moore v. Apfel*, 216 F.3d 864, 871 (9th Cir. 2000) (*quoting Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)). *See also Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court may not substitute its judgment for that of the ALJ if the evidence can reasonably support reversal or affirmation of the ALJ's decision. *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

It is incumbent on the ALJ to make specific findings so that the court need not speculate as to the findings. *Lewin*, 654 F.2d at 635 (citing *Baerga v. Richardson*, 500 F.2d 309 (3rd Cir. 1974)). In order to enable the court to properly determine whether the Commissioner's decision is supported by substantial evidence, the ALJ's findings "should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate

factual conclusions are based." *Lewin*, 654 F.2d at 635.

In reviewing the administrative decision, the District Court has the power to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In the alternative, the District Court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id.*

### II. Disability Evaluation Process

To qualify for disability benefits under the Social Security Act, a claimant must show that:

(a) he/she suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less that twelve months; and

(b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *see also* 42 U.S.C. § 423(d)(2)(A).

The claimant has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995), *cert. denied*, 517 U.S. 1122 (1996). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). If the claimant establishes an inability to perform his or her prior work, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful work that exists in the national economy. *Batson*, 157 F.3d at 721.

### III. Analysis of the Plaintiff's Alleged Disability

Social Security disability claims are evaluated under a five-step sequential evaluation procedure. *See* 20 C.F.R. § 404.1520(a)-(f). *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). The claimant carries the burden with respect to steps one through four. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If a claimant is found to be disabled, or not disabled, at any point during the

process, then no further assessment is necessary. 20 C.F.R. § 404.1520(a). Under the first step, the Secretary determines whether a claimant is currently engaged in substantial gainful activity. *Id.* § 416.920(b). If so, the claimant is not considered disabled. *Id.* § 404.1520(b). Second, the Secretary determines whether the claimant's impairment is severe. *Id.* § 416.920(c). If the impairment is not severe, the claimant is not considered disabled. *Id*. § 404.152(c). Third, the claimant's impairment is compared to the "List of Impairments" found at 20 C.F.R. § 404, Subpt. P, App. 1. The claimant will be found disabled if the claimant's impairment meets or equals a listed impairment. *Id.* § 404.1520(d). If a listed impairment is not met or equaled, the fourth inquiry is whether the claimant can perform past relevant work. *Id*. § 416.920(e). If the claimant can engage in past relevant work, then no disability exists. *Id.* § 404.1520(e). If the claimant cannot perform past relevant work, the Secretary has the burden to prove the fifth and final step by demonstrating that the claimant is able to perform other kinds of work. *Id.* § 404.1520(f). If the Secretary cannot meet his or her burden, the claimant is entitled to disability benefits. *Id.* § 404.1520(a). Plaintiff now asserts the ALJ improperly considered a sit/stand option and an adjustable desk as workplace accommodations.

### A.     The ALJ did not Err at Step Four of the Analysis

To determine whether a claimant is capable of performing past relevant work, an ALJ must first ascertain the demands of the claimant's former work and then compare the demands with the claimant's present capacity. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e); *see also Pinto v. Massanari*, 249 F.3d 840, 844-845 (9th Cir. 2001). The claimant "must be able to perform (1) the actual functional demands and job duties of a particular past relevant job; or (2) the functional demands and job duties of the occupation as generally required by employers throughout the national economy." *Id.* at 845. "This requires specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work." *Id.* There are two sources of information that may be used to define a claimant's past relevant work: "a properly completed vocational report, and the claimant's own testimony." *Id.*

When contrasting an SSA ALJ's assessment with an inquiry made under the Americans with Disabilities Act ("ADA"), the Supreme Court has stated the SSA ALJ "does not take the possibility of 'reasonable accommodation' into account, nor need an applicant refer to the possibility of reasonable

accommodation when she applies for SSDI." *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 803 (1999). This is because the matter of "reasonable accommodation" may turn on "highly disputed workplace-specific matters," and an ALJ's misjudgment about that "often fact-specific matter would deprive a seriously disabled person of the critical financial support the statute seeks to provide." *Id.* The result is that an ADA suit claiming that the plaintiff can perform a job with a reasonable accommodation may "well prove consistent with an SSDI claim that the plaintiff could not perform" the same job without it. *Id.*

Vocational experts may properly rely on accommodations that constitute broad vocational patterns, however. Mem. from Daniel L. Skoler, Assoc. Comm'r, SSA on the Am. With Disabilities Act., at 3 (June 2, 1993); *see also Surratt v. Astrue*, 2012 WL 1203945, *9 (D. Oregon 2012). Social Security disability assessments are "based on the functional demands and duties of jobs as ordinarily required by employers throughout the national economy, and not on what may be isolated variations in job demands." *Id.* As such, "the vocational inquiry focuses not on whether a specific employer might accommodate an impaired worker, but whether positions with the necessary accommodations are sufficiently available in the national economy such that a claimant may reasonably obtain employment." *Id.*

In *Eback v. Chater*, 94 F.3d 410, 411 (8th Cir. 1996), the district court granted summary judgment against a claimant who required a nebulizer four times a day for asthma. The ALJ found that the plaintiff was severely impaired, but that she could perform sedentary to light work in packaging, assembly, labeling, and machine operations where environmental irritants were not present. *Id.* The vocational expert, when presented with that hypothetical worker, stated:

> Legally, with the ADA laws, an employer must make reasonable accommodations for a person with a disability.... [I]n my mind, ... that would be a reasonable accommodation to give them special times to use a nebulizer to allow one to have that available for use during the day on a reasonable basis.

*Id.* at 412. The Eighth Circuit found this rationale "faulty for numerous reasons, the most significant of which" being the conclusion was based on the assumption that the employer would be willing to make accommodations under the ADA. *Id.* The court continued that "the ADA and the disability provisions of the Social Security Act have different purposes and have no direct relationship to each other." *Id.*

1   Further noting that the vocational expert "never testified that the cited jobs routinely offer employees
2   breaks[...] as would be necessary for [the plaintiff's] condition," the court found the ALJ's decision was
3   not supported by substantial evidence and remanded for an award of benefits. *Id.* at 412-13.
4         Similarly, in *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999), a plaintiff claiming a back injury
5   was denied benefits by the ALJ. The ALJ found that the plaintiff could perform other work, and relied
6   on vocational expert testimony that jobs existed that the plaintiff "could perform and that would
7   accommodate [his] need to alternate between sitting and standing." *Id.* The appealing plaintiff claimed
8   this testimony was improperly based on the ADA. *Id.* The court agreed with *Eback* that "the ADA and
9   the disability provisions of the Social Security Act have different purposes and have no direct
10  relationship to each other." *Id.* The court further found, however, that "[t]he vocational expert
11  explained, prior to mentioning the ADA, that a significant number of jobs existed" that the plaintiff
12  could perform. *Id.* Concluding that the ALJ did not rely on improper testimony from the vocational
13  expert, the *Jones* court affirmed the denial of benefits.
14        Furthermore, although the workplace option of alternating between sitting and standing is not
15  discussed in the Dictionary of Occupational Titles ("DOT"), a vocational expert's recognized expertise
16  can provide the necessary foundation for his testimony on the impact of a sit/stand option on the
17  occupational base for jobs. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). In *Pena v.*
18  *Apfel*, 1999 WL 155699, *2 (N.D. Cal. 1999), a plaintiff's claim was denied because the ALJ found he
19  possessed the RFC to perform certain other jobs, so long as he could alternate between sitting and
20  standing. The plaintiff raised the same argument Plaintiff raises here, that the testimony upon which the
21  ALJ relied assumed employers will accommodate the plaintiff. *Id.* The reviewing district court
22  disagreed, finding that the "ALJ's conclusion [...] is based strictly on the VE's knowledge that jobs
23  frequently allow for alternate standing and sitting." *Id; see also Martinez v. Heckler*, 807 F.2d 771, 774
24  (9th Cir. 1986) (ALJ asked VE to estimate the number of jobs available if plaintiff had to alternate
25  between sitting and standing).
26       Here, Plaintiff claims that the sit/stand option posed to the VE was an improper consideration of
27  an employer accommodation. All of Plaintiff's examining physicians opined that Plaintiff needs to
28  alternate between sitting and standing during an 8-hour work day. Accordingly, at the hearing, the ALJ,

11

noting that the sit/stand option is not discussed in the DOT, inquired of Generaux whether she was qualified to testify as to "jobs with the sit/stand option." Generaux answered affirmatively, citing her 25 years of experience in vocational rehabilitation. The ALJ then asked Generaux if someone with Plaintiff's limitations, including the need for a sit/stand option, could perform Plaintiff's past work. Generaux responded that such a person "would be able to perform given those parameters, the insurance medical clerk." It is clear from this portion of the record that Generaux, drawing on her extensive experience in the field, concluded that Plaintiff's previous work can broadly accommodate an employee who needs to alternate between sitting and standing. Unlike the VE in *Eback*, Generaux does not indicate her conclusion was based on assumptions that isolated employers will accommodate Plaintiff's limitations. Therefore, the Court finds that Generaux's opinion was based on her experience with broad vocational patterns, and that she did not improperly commingle her assessment with ADA requirements.

Plaintiff also asserts that the ALJ's mention of an adjustable desk to Generaux constituted improper consideration of an employer accommodation. Generaux did not testify that an individual with Plaintiff's limitations could perform Plaintiff's past relevant work only if the employer provided her with an adjustable desk to facilitate alternate sitting and standing. Rather, when presented with the hypothetical worker with Plaintiff's sit/stand limitation, Generaux categorically testified that such a person could perform Plaintiff's previous job. Only thereafter did the ALJ ask if such performance "could" be accomplished with an adjustable desk. Neither the ALJ nor the VE predicated his or her conclusion on the assumption that an employer will provide Plaintiff with an adjustable desk. Therefore, the Court finds that the ALJ's inquiry regarding the adjustable desk was not a factor in the ALJ's determination that Plaintiff could perform her past relevant work.

### B. The ALJ did not err at Step Five of the Analysis

Assuming, *arguendo*, that the ALJ improperly assumed employers in Plaintiff's past relevant work will accommodate Plaintiff's limitations with an adjustable desk, this Court finds that the ALJ did not err in his alternative finding of non-disability at Step Five.

"Once a claimant has established that he or she suffers from a severe impairment that prevents the claimant from doing any work he or she has done in the past, the claimant has made a prima facie

showing of disability." *Tackett v. Apfel*, 180 F.3d 1094, 1100-01 (9th Cir. 1999). The burden then shifts to the Commissioner to show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience. 20 CFR § 404.1560(b)(3). The Commissioner can meet this burden in two ways: (1) by the testimony of a vocational expert, or (2) by reference to the Medical–Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. *See Desrosiers v. Secretary of Health and Human Servs.*, 846 F.2d 573, 577–78 (Pregerson, J., concurring) (9th Cir. 1988). In determining whether an individual has any transferable skills, the focus is on the individual's past relevant work. "Transferability means applying work skills which a person has demonstrated in vocationally relevant past jobs to meet the requirements of other skilled or semi-skilled jobs." S.S.R. 82-4; *see* 20 C.F.R §§ 404.1568(d)(1), 416.968(d)(1). When the ALJ makes a finding of fact that a claimant has transferable skills, "the acquired work skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited in the State agency's determination or ALJ's decision." *Id.*; *see Bray v. Commissioner of Social Security*, 554 F.3d 1219, 1226 (9th Cir. 2009) (requiring remand due to ALJ's failure to make any findings regarding the transferability of acquired work skills).

  Here, the ALJ asked VE Generaux if "there are other jobs" an individual with Plaintiff's limitations could perform. (AR 60). Generaux responded:

> Given those parameters, [...] bookkeeping clerk, 214.362-042. At the unskilled level in the USA there are 68,486 bookkeeping clerks. And in Nevada, 690. And this is based on the most recent Department of Labor statistics for this quarter. Also credit authorizer, 210.367-038. In the USA there are 15,985 credit authorizers, and in Nevada 212. And information clerk, 237.367-022. In the USA 82,759, and in Nevada 765.

*Id.* The Court finds that this testimony satisfies Defendant's burden of establishing work in "significant numbers" that employs transferrable skills. *See Prince v. Apfel*, 1998 WL 317525 at *3 (10th Cir. 1998) ("The only evidence in the record relevant to the transferability of claimant's skills was the vocational expert's testimony, clearly a proper evidentiary source on this topic."). The Court therefore concludes that the ALJ did not err in his alternative Step Five analysis.

...

**CONCLUSION**

Having reviewed, considered, and weighed both the evidence that supports and the evidence that detracts from the ALJ's conclusion, the Court finds the ALJ's decision is supported by substantial evidence, and that the ALJ did not err in concluding that Plaintiff is not disabled at Step Four of the sequential analysis. Accordingly,

**RECOMMENDATION**

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Reversal and/or Remand (#23) be **denied**.

**IT IS FURTHER RECOMMENDED** that Defendant's Cross-motion for Summary Judgment #24 be **granted**.

**NOTICE**

Under Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. Appeals may been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). Failure to file objections within the specified time or failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 10th day of September, 2013.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge